UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOTHMAN MISANE, TYLER
SLEEP and JEROL WILLIAMS,

          Plaintiffs,                Case No. 1:21-cv-00487

-vs-                              Hon. Hala Y. Jarbou

CITY OF BANGOR, TOMMY
SIMPSON, MAYOR DARREN
WILLIAMS and SCOTT GRAHAM,

          Defendants.

| JONATHAN R. MARKO (P72450) | JOHN J. GILLOOLY (P41948) |
|---|---|
| **MARKO LAW, PLLC** | **GARAN LUCOW MILLER, P.C.** |
| Attorney for Plaintiffs | Attorney for Defendants |
| 1300 Broadway Street, Fifth Street | 1155 Brewery Park Blvd., Suite 200 |
| Detroit, MI 48226 | Detroit, MI 48207-2641 |
| P: (313) 777-7529 / F: (313) 771-5785 | P: (313) 446-5501 / F: (313) 259-0450 |
| jon@markolaw.com | jgillooly@garanlucow.com |

## **PLAINTIFFS' SECOND AMENDED COMPLAINT, BY RIGHT**

NOW COME the above-named Plaintiffs, by and through their attorneys, MARKO LAW, PLLC, and for their Second Amended Complaint, by Right against Defendant City of Bangor, Defendant Tommy Simpson, Defendant Mayor Darren Williams, and Defendant Scott Graham, state as follows:

## **JURISDICTION AND VENUE**

1.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1367(a).

MARKOLAW.COM

1300 BROADWAY ST | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓜ MARKO LAW

2.      Venue is proper under 28 U.S.C. § 1391(b) as the events and omissions giving rise to Plaintiffs' claims occurred in this District.

3.      The amount in controversy herein exceeds this Court's jurisdictional requirement, exclusive of interest, costs, and attorney fees.

## PARTIES

4.      Plaintiff Hothman Misane is a 33-year-old male who resides in the City of Kalamazoo, County of Kalamazoo, State of Michigan, and was, at all relevant times, an employee of Defendant City of Bangor's Police Department.

5.      Plaintiff Tyler Sleep is a 34-year-old male who resides in the City of Vicksburg, County of Kalamazoo, State of Michigan, and is/was, at all relevant times, an employee of Defendant City of Bangor's Police Department.

6.      Plaintiff Jerol Williams is a 50-year-old male who resides in the City of Bangor, county of Van Buren, State of Michigan, and was, at all relevant times, an employee of Defendant City of Bangor's Police Department.

7.      Defendant City of Bangor is a municipality, duly organized and carrying on governmental functions in the City of Bangor, County of Van Buren, State of Michigan, and whose headquarters is located at 257 W. Monroe Street, in the City of Bangor, County of Van Buren, State of Michigan.

MARKO LAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

8.    Defendant Tommy Simpson is currently employed by the City of Bangor as city manager and chief of police, and by all information and belief, resides in the City of Bangor, County of Van Buren, State of Michigan.

9.    Defendant Mayor Darren Williams is currently the mayor of the City of Bangor, and by all information and belief, resides in the City of Bangor, County of Van Buren, State of Michigan.

10.    Defendant Scott Graham is currently an attorney for the City of Bangor, and by all information and belief, resides in the City of Portage, County of Kalamazoo, State of Michigan.

## FACTUAL ALLEGATIONS

11.    Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

### HOTHMAN MISANE

12.    Plaintiff Misane began working for the City of Bangor Police Department in 2017, starting as an officer and later being promoted to sergeant, acting chief, deputy, and eventually chief of police.

13.    In the summer of 2018, Chief of Police, Defendant Tommy Simpson asked Plaintiff Misane if he has ever considered being with a man while Plaintiff Misane was riding in the passenger seat of a patrol vehicle on duty.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

14.     On several occasions, Defendant Simpson has discussed with Plaintiff Misane and other employees of the department various stories of his sexual experiences in explicit and inappropriate detail, including, but not limited to, the following:

a.     Defendant Simpson told Plaintiff Misane and others that an officer in Berrien County requested that Defendant Simpson urinate on his body.

b.     Defendant Simpson told Plaintiff Misane that he had a boyfriend who was having anal sex with him, and that the boyfriend was a "top."

c.     Defendant Simpson stated that his boyfriend was giving him a "hand-job" while he was bent over and being sodomized. Defendant Simpson shared that he ejaculated in his boyfriend's hand and that the boyfriend then consumed the ejaculated fluids.

d.     Regularly, and last in January 2021, Defendant Simpson would ride with Plaintiff in his patrol vehicle and would discuss the sexual experiences he has had with several residents of the city of Bangor.

e.     Defendant Simpson stated that he "hooked up" and received oral sex from a resident that he and Plaintiff had arrested together for a parole violation.

f.     Defendant Simpson told Plaintiff Misane about him having sex with a married male at a residential address as they drove by.

g.     Defendant Simpson told Plaintiff Misane of a male that was looking for him on April 20, 2019, during a 420 festival. Defendant Simpson stated that he ended up having sex with that person.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

h.   Defendant Simpson spoke to Plaintiff Misane about another City of Bangor police officer, Plaintiff Jerol Williams, asking about Officer Williams' penis size and stating, "Do you think Jerol is well hung?"

i.   In the summer of 2020 and in the presence of other officers, Defendant Simpson shared a story where he "hooked up" with a University of Notre Dame student in South Bend, Indiana. Defendant Simpson stated that he had a hard time and felt judgment with that sexual experience because there was Jesus on a cross.

j.   In February 2021, Defendant Simpson told Plaintiff that he has engaged in sexual contact, including oral sex, with a firefighter of the Bangor Community Fire Rescue Department.

15.   On May 13, 2019, Plaintiff and Defendant Simpson went to a training in Lansing, Michigan, at the Michigan State Police Headquarters. This was a two-day training event that required Plaintiff and Defendant Simpson to stay in a hotel overnight.

16.   In the morning the following day, Defendant Simpson told Plaintiff Misane that he had sex with the hotel clerk that was working night shift the prior night, that the employee was the "top," and that, "he took care of" him. Defendant Simpson then told Plaintiff Misane that he could have watched if he wanted to, and that Defendant Simpson would watch Plaintiff Misane engage in sexual acts with a woman.

17.     In the summer of 2020, Defendant Simpson became the Bangor City Manager, and Plaintiff was a sergeant and acting Chief of Police, was promoted to deputy chief, and then Chief of Police in November of 2020.

18.     In October 2020, while Plaintiff was conducting interviews as the acting Chief of Police in anticipation of a potential hire, Defendant Simpson asked to meet the candidates and asked Plaintiff Misane if they were attractive.

19.     Defendant Simpson told Plaintiff Misane that he did not want him to hire anymore officers from Benton Harbor, which has a larger number of African American employees.

20.     In November 2020, while staying at another hotel, Defendant Simpson stated "You can come cuddle if you want, I won't mind" to Plaintiff Misane, who faked sleeping to avoid confrontation.

21.     The next morning, as Plaintiff and Defendant Simpson were getting ready to leave and check-out of the hotel, Defendant Simpson told Plaintiff Misane that he found someone who wanted to watch Plaintiff have sex with his wife while Defendant Simpson "licked his anus." Defendant Simpson said, "You fell asleep though."

22.     Defendant Simpson demoted Plaintiff Misane as acting chief, not allowing Plaintiff Misane to effectively carry out the duties of the position.

23.     In March 2021, an employee of the City of Bangor had filed a sexual harassment complaint on behalf of Plaintiff Misane. After City of Bangor Mayor Darren Williams had received the complaints, Plaintiff Misane admitted that the complaint was his.

24.     Subsequently, Mayor Williams called Plaintiff several times to arrange a meeting with Plaintiff Misane.

25.     By all information and belief, Defendant Simpson and Mayor Williams have a close, personal relationship.

26.     Plaintiff Misane went to city hall to meet with the mayor on March 12, 2021, preparing a detailed complaint regarding Defendant Simpson's harassment and inappropriate behavior beforehand.

27.     Mayor Williams and Sergeant Justin Weber were present at this meeting, during which Plaintiff Misane was immediately terminated from his job position by Mayor Williams.

28.     Plaintiff still turned his complaint in to Mayor Williams, who stated that he had 60 days to review the complaint.

## JEROL WILLIAMS

29.     Plaintiff Jerol Williams began working for the Defendant City of Bangor Police Department in January 2020 and has worked as a police officer for approximately 15 years.

30.     Plaintiff Williams, an African American male, has regularly been passed over for promotions in the course of his employment with the city of Bangor, while his white counterparts with fewer qualifications and less experience have been promoted, including to a sergeant's position when Plaintiff Misane was terminated, and including to the Bangor Public Schools resource officer position for the 2020-2021 school year.

31.     Defendant Simpson made a racially based comment about Plaintiff Williams, stating, "I don't want to be racist but Jerol and his child support...."

32.     Defendant Simpson told Plaintiff Williams and others that an officer in Berrien County requested that Defendant Simpson urinate on his body.

33.     Defendant Simpson has told Plaintiff Williams and others that he heard a public safety officer from another city was "well-hung" and had a "huge dick," while using his forearm to simulate the size of this individual's penis.

34.     Defendant Simpson spoke to Plaintiff Misane about Plaintiff Williams' penis size, asking, "Do you think Jerol is well hung?"

35.     In the summer of 2020, Defendant Simpson asked Plaintiff Williams about his neighbor, stating that, "I wish we could somehow break them up and you could get him away from her." "I would love to get me a piece of that!" "I hear that he treats her like shit…. really bad…ummm...I'd love to get that."

MARKOLAW.COM

1300 BROADWAY ST | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

36.     In the summer of 2020, Plaintiff Williams was present when Defendant Simpson told him and other officers a story regarding "hooking up" with young college guys at the University of Notre Dame, including one instance where he described having anal sex with one of the males and looked out of the window to see a giant mural of "Touchdown Jesus," and that he could not "stay hard" after seeing the mural.

37.     In the summer of 2020, Defendant Simpson told Plaintiff Williams about how another city employee loved using anal beads and described how the employee loved having his girlfriend use them by putting them in his anus and taking them out.

38.     In February 2021, Plaintiff Williams was speaking to Defendant Simpson's assistant, Amanda Karr, and Defendant Simpson told Plaintiff Williams, "Hey, don't be flirting with the help now!"

39.     On March 4, 2021, Defendant Simpson informed Plaintiff Williams that someone had taken a photograph of him sleeping at his second job, letting him know that he was not in trouble and that he "had his back." Defendant Simpson then continued to go around and tell other city employees and residents that Plaintiff Williams was sleeping on job as a police officer.

40.     On March 13, 2021, Plaintiff Williams filed a sexual harassment/hostile work environment complaint against Defendant Simpson.

**TYLER SLEEP**

41.     Plaintiff Sleep began working for the City of Bangor Police Department in May 2019.

42.     On numerous occasions, Defendant Simpson has brought up Plaintiff Sleep's former police chief and his wife in an inappropriate sexual manner, sharing that the former chiefs stated that, "eating her out was like eating a Manwich."

43.     Defendant Simpson on several occasions requested that Plaintiff Sleep pick him up at his apartment, regularly asking if Plaintiff's body camera was on. On one occasion, after stating his body camera was off, Defendant Simpson stated, "I just got done doing the McNasty," and laughing.

44.     On another occasion, Defendant Simpson asked Plaintiff Sleep to pick him up from a gas station, where he was talking to a man. After his conversation was over, Defendant Simpson told Plaintiff that he had "hooked up" with the man previously but that he was making a complaint at the time.

45.     On several occasions, Defendant Simpson has shared his sexual preferences in detail with Plaintiff Sleep, including that he does not like to be pursued by men, that he is the "hunter," that he likes men of mixed race and that if he could convert a straight man, it would be very exciting for him.

46.     Defendant Simpson has regularly and unwelcomely touched Plaintiff Sleep's body, giving him back massages and putting his arm around him.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P (313) 777-7LAW
F (313) 771-5785

MARKO LAW

47.    Defendant Simpson has also discussed Plaintiff Sleep's weight, calling him "Fatso" behind his back.

48.    On April 21, 2021, Plaintiff Sleep spoke to Sergeant Webber about how he was unhappy with the recent occurrences at the police department and what he felt was wrong. Plaintiff Sleep also shared his concerns with Defendant Simpson and stated that he was going to be looking for employment elsewhere.

49.    On April 22, 2021, Plaintiff Sleep went to work and was interviewed by City of Bangor Attorney, Scott Graham, who came to the police station and warned Plaintiff Sleep that he had investigated the sexual harassment complaints filed and would be going after people who "caused damages to the city." Attorney Scott Graham told Plaintiff Sleep that he believed the individuals who filed complaints against Defendant Simson were "conspiring against the city."

50.    At this time, Plaintiff Sleep had begun drafting his sexual harassment complaint against Defendant Simpson but had not yet turned it in. Plaintiff Sleep told Attorney Scott Graham that he thought this interview was bizarre and that he did not have anything he wanted to share and just wanted to start his shift.

51.    Plaintiff Sleep then left the station to begin his shift when he received a call to return to the station, where City Attorney Scott Graham accused Plaintiff Sleep of being insubordinate for not answering his questions and suspended Plaintiff Sleep. Attorney Scott Graham demanded Plaintiff Sleep's gun and badge.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

## COUNTS

## COUNT I: VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
### *(Hostile Work Environment- As to All Defendants)*

52.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

53.     At all material times, Plaintiffs were employees, and Defendant City of Bangor was their employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

54.     Defendant City of Bangor is vicariously liable for the violation of Plaintiff's Michigan Elliott-Larsen Civil Rights Act by Defendant Simpson under the doctrine of *respondeat superior*.

55.     Plaintiffs Misane, Williams, and Sleep were subjected to unwelcome and offensive verbal and/or physical conduct due to their sex and/or gender.

56.     Plaintiffs Williams was also subjected to unwelcome and offensive verbal and/or physical conduct due to his race.

57.     Defendant City of Bangor had express knowledge of Defendant Simpson's predisposition and history of sexual and racial harassment and chose to do nothing to protect Plaintiff(s).

58.     The unwelcome conduct complained of was based on Plaintiffs' sex and/or gender and Plaintiff Williams' race.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

59.   The unwelcome conduct affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with Plaintiffs' work performance and/or creating an intimidating, hostile, or offensive work environment.

60.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and continues to sustain injuries and damages.

## COUNT II
## VIOLATION OF MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT
*(Disparate Treatment - As to All Defendants)*

61.   Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

62.   At all relevant times, Plaintiff Jerol Williams was an employee and Defendant was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ECLRA"), MCL 37.2101, *et seq*.

63.   At all relevant times, under the ELCRA, Plaintiff Williams had a right to employment free from discrimination based on his race.

64.   Defendant, through its agents, representatives, and employees, was predisposed to discriminate on the basis of race and acted in accordance with that predisposition.

65.   Defendant, through its agents, representatives, and employees, treated Plaintiff Williams differently from similarly situated Caucasian employees in the terms and conditions of his employment, on the unlawful basis of race.

MARKO LAW

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO.COM

66.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff Williams has suffered and continues to suffer injuries and damages.

## COUNT III
## VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
### *(Retaliation- As to All Defendants)*

67.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

68.     Defendant City of Bangor retaliated against Plaintiffs for complaining about being sexually harassed by Defendant Simpson.

69.     The filing of complaints and/or the reporting of sexual discrimination such as that endured by Plaintiffs is a protected activity under ELCRA.

70.     In response to Plaintiffs' complaints, Plaintiffs were punished without justification by Defendants.

71.     Plaintiffs made complaints to the Defendant City of Bangor regarding Defendant Simpson's sex and/or gender-based discriminatory practices, and nothing was ever done to remedy the situation, and in fact, the discrimination and disparate treatment worsened.

72.     Defendant's actions were willful, intentional, and/or made in reckless disregard of Plaintiffs' rights and sensibilities.

73.     As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and continue to suffer damages and injuries.

MARKO.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

## COUNT IV
## VIOLATION OF THE WHISTLEBLOWERS' PROTECTION ACT
### *(As To All Defendants)*

74.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

75.     Plaintiffs Hothman Misane and Tyler Sleep reported or were about to report violations of law by Defendant Simpson to the City of Bangor.

76.     Defendant City of Bangor was aware that Plaintiff Misane and Plaintiff Sleep had reported or were about to report violations of law.

77.     Defendants' actions in retaliating conduct against Plaintiffs, included but are not limited to, the termination of and suspension of Plaintiff's employment, and were intentional and in disregard for Plaintiff's constitutional protected rights.

78.     The retaliatory conduct of Defendants is a violation of Michigan Whistleblowers Act, Mich. Comp Laws 15.362, Mich State Ann 17.428(3).

79.     As a direct and proximate result of the violation of Plaintiffs' rights, Plaintiffs have suffered irreparable injuries and damages including but not limited to loss of earnings and earning capacity, past and future lost earnings, mental and emotional distress, embarrassment, humiliation, anxiety about the future, loss of ordinary pleasures of everyday life, and all other damages to be discovered through the course of litigation.

## COUNT V
## Violation of 42 U.S.C. §1983 – Fourteenth Amendment Equal Protection
*(As to Individual Defendants)*

80.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

81.     At all times herein, the Defendants herein intentionally discriminated against Plaintiffs Misane, Sleep, and Williams based on their sex and/or gender in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983.

82.     At all times herein, the Defendants herein intentionally discriminated against Plaintiff Williams based on his race in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983.

83.     In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of the Plaintiffs.

84.     As a direct and proximate result of the unconstitutional acts of the Defendants as alleged herein, Plaintiffs have sustained violations of their rights to equal protection of the law and, as a result, are entitled to damages.

## COUNT VI
## Violation of 42 U.S.C. §1981
*(As to All Defendants)*

85.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

86.     At all times herein Plaintiff Williams had entered into a contract of

employment with the Defendant, City of Bangor.

87.     These Defendants undertook, instead, to turn that contract into an employment situation wherein Plaintiff Williams was subjected to a racially discriminatory work environment that inflicted upon him humiliation, and racism, as set forth herein–whereby his right to make and enforce his contract with the City of Bangor was afflicted, diminished, and undermined thereby creating a situation wherein Plaintiff's rights were far less than, and not the same as, those enjoyed by white persons, in violation of 42 U.S.C. §1981

88.     In their discriminatory actions as alleged above, Defendants have acted with malice or reckless indifference to the rights of the Plaintiff.

89.     As a direct and proximate result of the unconstitutional acts of the Defendants as alleged herein, Plaintiff has sustained a violation of his right to make and enforce contracts and, as a result, is entitled to damages.

## COUNT VII
### Violation of 42 U.S.C. §1983 – *Monell* Liability
*As to Defendant City of Bangor*

90.     Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

91.     Plaintiffs have been subjected to a deprivation of clearly established, constitutionally protected rights and privileges secured by the Constitution of United

States, including their Fourteenth Amendment rights as described in Count V and VI.

92.    The foregoing rights were clearly established at the time of the violations.

93.    The deprivations were caused by the customs, policies, and established practices of the Defendant City of Bangor, acting under color of its statutory and legal authority.

94.    Defendant Simpson and Defendant Mayor Williams were state actors acting under the color of law.

95.    Defendant City of Bangor's deliberate indifference to Plaintiffs subjected Plaintiffs to violations of their Fourteenth Amendment and Equal Protection rights, including by failing to adequately train and supervise Defendant Simpson, implicitly condoning the behavior of Defendant Simpson, manifesting deliberate indifference to the ongoing harassment of Plaintiffs, and other policies, customs, and practices to be discovered through the course of litigation.

### COUNT VIII
### FIRST AMENDMENT RETALIATION VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTOIN PURSUANT TO 42 U.S.C. § 1983
*(As to Individual Defendants)*

96.    Plaintiffs, by reference, incorporate the preceding paragraphs as though fully set forth herein.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

97.     This action is brought pursuant to 42 U.S.C. § 1983 against Defendants for purposeful discrimination, under color of law, in violation of the First Amendment to the United States Constitution.

98.     Plaintiffs have a constitutional right to liberty, including the right to be free from retaliation for exercising their first amendment rights.

99.     Plaintiffs engaged in protected activity when they filed a discriminatory harassment complaint(s) and participated in the investigatory process of those complaints.

100.    Defendants took adverse actions against the Plaintiffs.

101.    Defendants were, at all times relevant to this action, acting under color of law and within the scope of their employment.

102.    At all relevant times, Defendants were acting pursuant to their authority and were using the power of their office to justify their actions.

103.    The right to be free from retaliation was a clearly established right, of which a reasonable person in the Defendants' position under the circumstances of this case knew or should have known.

104.    Defendant's actions as set forth herein, were taken in retaliation of Plaintiffs exercising their First Amendment rights.

105.    Accordingly, Defendants are not entitled to governmental or qualified immunity.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

106.   Plaintiffs were subjected to adverse employment actions, including but not limited to termination and suspension.

107.   These adverse actions were motivated, at least in part, by Plaintiffs protected conduct.

108.   As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiffs as described herein, which constitute a violation of Plaintiffs' constitutional rights, Plaintiffs have suffered injuries and damages, including but not limited to: potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

### COUNT IX
### Violation of Title VII OF THE CIVIL RIGHTS ACT OF 1964–
### Discrimination Based on Sexual Orientation, Sex and/or Race
*(As to All Defendants)*

109.   Plaintiffs by reference, incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

110.   At all relevant times, there was in effect a federal statute, the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., which provides:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

111.   Defendants were aware, or should have been aware, of Title VII and that it is illegal to treat an employee differently because of the employee's sexual orientation, sex, and/or race.

112.   During Plaintiffs' employment with Defendants, they were all subjected to acts of sexual orientation and/or sex discrimination by Defendants' employees and supervisors, and Plaintiff Jerol Williams was subjected to acts of race discrimination.

113.   This illegal discrimination created a hostile and abusive work environment for Plaintiffs.

114.   Defendants' actions as set forth above were willful, intentional and/or made in reckless disregard of Plaintiffs' rights.

115.   Defendants' conduct as described above constitutes a willful violation of Title VII.

116.   Plaintiffs were subject to adverse employment actions, including being unlawfully terminated and/or constructively discharged.

117.   As a direct and proximate result of the unconstitutional and illegal acts of the Defendants, as alleged herein, all Plaintiffs have sustained violations of their rights to a work environment free of unlawful sexual orientation and/or sex, discrimination and Plaintiff Jerol Williams has sustained violations of his right to a work environment free of unlawful race discrimination and, as a result, Plaintiffs are entitled to damages as set forth in the damages section of his complaint.

**COUNT X**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Retaliation**
*(As to All Defendants)*

118.   Plaintiffs, by reference, incorporate the preceding paragraphs of their Complaint as though fully set forth herein.

119.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* prohibits retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because such individual engaged in an activity protected under the act.

120.   Plaintiffs engaged in a protected activity by reporting Title VII violations to Department heads.

121.   Due to Plaintiffs engaging in such protected activities, Defendants changed the terms of Plaintiffs' employment.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

122.   Plaintiffs continues to suffer emotional distress, and have suffered pecuniary losses, the value of benefits, and non-pecuniary damages as a result of Defendants' retaliation.

### COUNT XI
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 –
### Hostile Work Environment
*(As to All Defendants)*

123.   Plaintiffs, by reference, incorporates the preceding paragraphs of their Complaint as though fully set forth herein.

124.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* prohibits discrimination and retaliation against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sexual orientation, sex, or race.

125.   At all material times, Plaintiffs have been employees of Defendant employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

126.   All Plaintiffs are heterosexual males, additionally Plaintiff Jerol Williams is an African American, in the Defendant City of Bangor, and are members of a protected classes under Title VII of the Civil Rights Act of 1964.

127.   As an employer within the meaning of Title VII of the Civil Rights Act of 1964, Defendants owed Plaintiffs a duty not to discriminate against them with respect to employment, promotional opportunities, compensation, or other

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓙ MARKO LAW

conditions or privileges of employment on the basis of Plaintiffs' sexual orientation, sex, or race.

128.   Because of their sexual orientation and/or sex, Plaintiffs have been subjected to treatment during their careers with Defendants that have been disparate from that accorded to non-heterosexual employees of Defendant, who have been treated more favorably than Plaintiffs.

129.   Because of his race, Plaintiff Jerol Williams has been subjected to treatment during his career with Defendants that has been disparate from that accorded to non-African American employees of Defendant, who have been treated more favorably than Plaintiff Jerol Williams.

130.   As a result of the discrimination on the basis of Plaintiffs sexual orientation and or sex, and race for Plaintiff Jerol Williams, Plaintiffs were retaliated against after reporting and forced to leave their employment.

131.   There is no legitimate business reason justifying the retaliation to which Plaintiffs has been subjected during their employment with Defendant.

132.   As a direct and proximate result of Defendants' unlawful actions against Plaintiffs described herein, Plaintiffs have suffered injuries and damages, including, but not limited to potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of ordinary life pleasures.

133.   Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* Defendants are liable to Plaintiffs for all damages allowed under Federal Law.   To the extent that damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiffs and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.   Defendants' conduct was extreme and outrageous subjecting Defendants to punitive damages.

134.   As a direct and proximate cause of Defendant's unlawful actions, Plaintiffs have sustained and continues to sustain injuries and damages.

**WHEREFORE** Plaintiffs respectfully request this Honorable Court enter judgment on Plaintiffs' claims in a sum that the Court or jury find to be fair and just, including attorney fees, costs, and exemplary damages.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Dated:  October 27, 2021

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **October 27, 2021**, via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other:  Mi-FILE Truefiling |
| ☒ ECF System | ☐ Email |

*/s/ Melinda S. Morisset*