UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT


HOTHMAN MISANE, TYLER
SLEEP and JEROL WILLIAMS,

      Plaintiffs,                                     Case No 21-487

v.                                                Judge Hala Y. Jarbou

CITY OF BANGOR, TOMMY SIMPSON,
MAYOR DARREN WILLIAMS and SCOTT GRAHAM

      Defendants.

---

| | |
|---|---|
| Jonathan R. Marko (P72450) | Michael S. Bogren (P34835) |
| Caitlin E. Malhiot (P76606) | Charles L. Bogren (P82824) |
| MARKO LAW, PLLC | PLUNKETT COONEY |
| Attorneys for Plaintiffs | Attorneys for Tommy Simpson |
| 1300 Broadway Street, Fifth Floor | 333 Bridge Street, NW, Suite 530 |
| Detroit, MI  48226 | Grand Rapids, MI  49504 |
| 313.777.7529 / 313.771.5785 (fax) | 269.226.8820 / 269.382.2506 (fax) |
| jon@markolaw.com | mbogren@plunkettcooney.com |
| cait@markolaw.com | cbogren@plunkettcooney.com |
| | |
| | John J. Gillooly (P41948) |
| | Kathleen M. Jozwiak (P79921) |
| | GARAN LUCOW MILLER, P.C. |
| | Attorneys for City of Bangor, Mayor Williams |
| | and Scott Graham |
| | 1155 Brewery Park Blvd., Suite 200 |
| | Detroit, MI  48207 |
| | 313.446.5501 / 313.259.0450 (fax) |
| | jgillooly@garanlucow.com |
| | kjozwiak@garanlucow.com |

---

## DEFENDANTS DARREN WILLIAMS AND SCOTT GRAHAM'S MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, DARREN WILLIAMS AND SCOTT GRAHAM, by and through their attorneys, GARAN LUCOW MILLER, P.C., and for their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12(b)(6) and 56, state as follows:

1.      This is an employment matter arising out of Plaintiffs' employment with the Bangor Police Department, and more specifically, arising out of Plaintiff Hothman Misane's termination on March 12, 2021; Plaintiff Tyler Sleep's suspension on April 22, 2021 and voluntary resignation on July 19, 2021; and Jerol Williams' voluntary resignation on May 21, 2021.

2.      All Plaintiffs claim that adverse actions were taken against them on the basis of their sex, sexual orientation, and/or race creating a hostile work environment.

3.      Plaintiffs also assert that they were retaliated against for submitting sexual harassment complaints against Defendant Tommy Simpson, the City Manager and Chief of Police at the time that Plaintiffs were terminated, suspended, and/or voluntarily resigned.

4.      Plaintiffs bring the following claims against former Mayor Darren Williams and city attorney Scott Graham in their Second Amended Complaint: (I) violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment), MCL 37.2101, et seq.; (II) violation of Michigan's Elliott-Larsen Civil Rights Act (disparate treatment), MCL 37.2101, et seq.; (III) violation of Michigan's Elliott-Larsen Civil Rights Act (retaliation), MCL 37.2101, et seq.; (IV) violation of the Whistleblowers' Protection Act, MCL 15.362; (V) § 1983 equal protection claim under the Fourth Amendment; (VI) § 1981 claim; (VII) § 1983 First Amendment retaliation claim; (VIII) violation of Title VII of the Civil Rights Act of 1964 (discrimination based on sexual orientation, sex and/or race), 42 U.S.C. § 2000e, et seq.; (IX) violation of Title VII of the Civil Rights Act of 1964 (retaliation), 42 U.S.C. § 2000e, et seq.; and (X) violation of Title VII of the Civil Rights Act of 1964 (hostile work environment), 42 U.S.C. § 2000e, et seq. (ECF No. 20).

5.       However, both Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiffs' claims in their entirety for the reasons set forth in the accompanying brief.

WHEREFORE, Defendants DARREN WILLIAMS and SCOTT GRAHAM respectfully request that this Court grant their Motion for Summary Judgment and dismiss Plaintiffs' claims against them in their entirety.

Respectfully submitted,

 /s/Kathleen M. Jozwiak
Kathleen M. Jozwiak (P79921)
GARAN LUCOW MILLER, P.C.
Attorney for Defendants
kjozwiak@garanlucow.com

Dated: November 30, 2022

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED.................................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY........................................................vi

INDEX OF AUTHORITIES..................................................................................................ix

LIST OF EXHIBITS...........................................................................................................xii

BRIEF IN SUPPORT OF DEFENDANTS DARREN WILLIAMS AND SCOTT GRAHAM'S
MOTION FOR SUMMARY JUDGMENT.........................................................................1

STATEMENT OF MATERIAL FACTS...............................................................................1

    I.      Plaintiff Hothman Misane.............................................................................1

          A.      Employment with the City of Bangor..........................................1

          B.      The Mendoza Investigation and Misane's Termination................2

          C.      Misane's Sexual Harassment Complaint against Defendant Simpson and
Defendant Graham's Investigation of the Complaint....................2

          D.      Timeline of Events.......................................................................4

    II.     Plaintiff Tyler Sleep....................................................................................4

    III.    Plaintiff Jerol Williams...............................................................................5

STANDARD OF REVIEW...................................................................................................7

    I.      Fed. R. Civ. P. 12(b)(6)...............................................................................7

    II.     Fed. R. Civ. P. 56.........................................................................................7

LAW AND ARGUMENT....................................................................................................8

    I.      Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile
work environment), MCL 37.2101, *et seq*.................................................8

          A.      Defendant Williams and Defendant Graham are both entitled to summary
judgment on Plaintiffs' claim for hostile work environment under
Michigan's Elliott-Larsen Civil Rights Act because all Plaintiffs concede
that neither Defendant Williams nor Defendant Graham subjected Plaintiffs
to unwelcome sexual conduct or communication.........................8

B. Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiff Williams' claim for racial hostile work environment because the alleged harassment was not sufficiently severe or pervasive to alter the conditions of Plaintiff Williams' employment and create an abusive working environment...................................................................................10

II. Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (hostile work environment), 42 U.S.C. § 2000e, *et seq*........................................................12

III. Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (disparate treatment), MCL 37.2101, *et seq*.....................................................12

IV. Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (retaliation), MCL 37.2101, *et seq.* and violation of Title VII of the Civil Rights Act of 1964 (retaliation), 42 U.S.C. § 2000e, *et seq*.................................................14

A. Defendants Williams and Graham are not Plaintiffs' "employers" for purposes of Title VII, and thus, cannot be sued under Title VII.................15

B. Defendants Williams and Graham are entitled to summary judgment on Plaintiff Misane's claim for retaliation because (1) he was terminated for losing evidence in a criminal sexual conduct case resulting in the acquittal of a pedophile, and (2) Misane did not turn in his complaint against Simpson until after he was terminated......................................................................16

C. Defendants Williams and Graham are entitled to summary judgment on Plaintiff Sleep's claim for retaliation because (1) he was suspended for his work performance, and (2) he did not disclose the details of his complaint against Simpson until after he was suspended............................................16

D. Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' claim for retaliation because (1) no adverse action was taken against him, and (2) even if the alleged "non-promotions" are considered "materially adverse" actions, other officers were promoted to the positions before Plaintiff Williams submitted his complaint...............17

(V) Plaintiffs' claim for violation of the Whistleblowers' Protection Act MCL 15.362................................................................................................................17

(VI) Plaintiffs' § 1983 equal protection claim under the Fourth Amendment.................20

A. Plaintiffs fail to allege sufficient facts to state an equal protection claim....20

B. Defendants Williams and Graham are entitled to summary judgment for the same reasons they are entitled to summary judgment on Plaintiffs' claims for hostile work environment and disparate treatment...............................21

C.      Defendants Williams and Graham are entitled to qualified immunity........21

(VII)   Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' § 1981 claim because Plaintiff Williams fails to state with specificity how his alleged "contract" with the City of Bangor was afflicted, diminished, and undermined on the basis of his race.......................................................................22

(VIII)  Plaintiffs' § 1983 First Amendment retaliation claim.............................................24

(IX)    Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (discrimination based on sexual orientation, sex and/or race), 42 U.S.C. § 2000e, *et seq*.............................................................................................................................24

## CONCISE STATEMENT OF ISSUES PRESENTED

I.     Whether Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment) under a sexual harassment theory since all Plaintiffs admit that neither Defendant Williams nor Defendant Graham subjected Plaintiffs to unwelcome sexual conduct or communication.

II.    Whether Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment) under a race theory since the alleged harassment was not sufficiently severe or pervasive to alter the conditions of Plaintiff Williams' employment and create an abusive working environment.

III.   Whether Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (hostile work environment) fails for the same reasons that Plaintiffs' claims fail under Michigan's Elliott-Larsen Civil Rights Act.

IV.    Whether Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (disparate treatment) fails since he has failed to produce evidence establishing that his alleged "non-promotions" were based on his race.

V.     Whether Defendants Williams and Graham are Plaintiffs' "employers" for purposes of Plaintiffs' claims under Title VII.

VI.    Whether Plaintiff Misane has produced evidence that he was terminated because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.

VII.   Whether Plaintiff Sleep has produced evidence that he was suspended because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.

VIII.  Whether Plaintiff Williams has produced evidence that he was not promoted because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.

IX.    Whether Plaintiffs' claim for violation of the Whistleblowers' Protection Act fails for the same reasons Plaintiffs' retaliation claims fail under MELCRA and Title VII.

X.     Whether Plaintiffs have failed to allege sufficient facts to state a § 1983 equal protection claim under the Fourth Amendment.

XI.    Whether Defendants Williams and Graham are entitled to summary judgment on Plaintiffs' § 1983 equal protection claim under the Fourth Amendment for the same reasons they are

entitled to summary judgment on Plaintiffs' claims for hostile work environment and disparate treatment.

XII.     Whether Defendants Williams and Graham are entitled to qualified immunity on Plaintiffs' § 1983 equal protection claim under the Fourth Amendment.

XIII.    Whether Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' § 1981 claim because Plaintiff Williams fails to state with specificity how his alleged "contract" with the City of Bangor was afflicted, diminished, and undermined on the basis of his race.

XIV.    Whether a reasonable juror could find that any adverse actions allegedly taken against the Plaintiffs were motivated by the exercise of their First Amendment rights for purposes of Plaintiffs' § 1983 First Amendment retaliation claim.

XV.     Whether Defendants Williams and Graham are entitled to qualified immunity on Plaintiffs' § 1983 First Amendment retaliation claim.

XVI.    Whether Plaintiffs have produced evidence that Defendant Williams and/or Defendant Graham discriminated against Plaintiffs on the basis of their sexual orientation, sex, or race here for purposes of Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (discrimination based on sexual orientation, sex and/or race).

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

I.   **Whether Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment) under a sexual harassment theory since all Plaintiffs admit that neither Defendant Williams nor Defendant Graham subjected Plaintiffs to unwelcome sexual conduct or communication.**

*Kalich v. AT & T Mobility, LLC*, 679 F.3d 464 (6th Cir. 2012); MCL 37.2103(i)

II.  **Whether Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment) under a race theory since the alleged harassment was not sufficiently severe or pervasive to alter the conditions of Plaintiff Williams' employment and create an abusive working environment.**

*Meadows v. Wahler Auto. Sys., Inc.*, 45 F. Supp. 3d 645 (E.D. Mich. 2014); *Williams v. CSX Transp. Co.*, 643 F.3d 502 (6th Cir. 2011)

III. **Whether Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (hostile work environment) fails for the same reasons that Plaintiffs' claims fail under Michigan's Elliott-Larsen Civil Rights Act.**

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724 (6th Cir. 2006)

IV.  **Whether Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (disparate treatment) fails since he has failed to produce evidence establishing that his alleged "non-promotions" were based on his race.**

*Vredevelt v. GEO Grp., Inc.,* 145 F. App'x 122 (6th Cir. 2005)

V.   **Whether Defendants Williams and Graham are Plaintiffs' "employers" for purposes of Plaintiffs' claims under Title VII.**

42 U.S.C.A. § 2000e(b); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir. 1997)

VI.  **Whether Plaintiff Misane has produced evidence that he was terminated because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.**

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

VII.   **Whether Plaintiff Sleep has produced evidence that he was suspended because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.**

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

VIII.   **Whether Plaintiff Williams has produced evidence that he was not promoted because of his complaint against Defendant Simpson for purposes of his retaliation claim under MELCRA and Title VII.**

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

IX.   **Whether Plaintiffs' claim for violation of the Whistleblowers' Protection Act fails for the same reasons Plaintiffs' retaliation claims fail under MELCRA and Title VII.**

MCL 15.362; *Whitman v. City of Burton*, 493 Mich. 303, 831 N.W.2d 223 (2013); *Wolcott v. Champion Int'l Corp.*, 691 F. Supp. 1052 (W.D. Mich. 1987)

X.   **Whether Plaintiffs have failed to allege sufficient facts to state a § 1983 equal protection claim under the Fourth Amendment.**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

XI.   **Whether Defendants Williams and Graham are entitled to summary judgment on Plaintiffs' § 1983 equal protection claim under the Fourth Amendment for the same reasons they are entitled to summary judgment on Plaintiffs' claims for hostile work environment and disparate treatment.**

*Boger v. Wayne Cnty.*, 950 F.2d 316 (6th Cir. 1991)

XII.   **Whether Defendants Williams and Graham are entitled to qualified immunity on Plaintiffs' § 1983 equal protection claim under the Fourth Amendment.**

*Ahlers v. Schebil,* 188 F.3d 365 (6th Cir. 1999)

XIII.   **Whether Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' § 1981 claim because Plaintiff Williams fails to state with specificity how his alleged "contract" with the City of Bangor was afflicted, diminished, and undermined on the basis of his race.**

*Amini v. Oberlin Coll*., 440 F.3d 350 (6th Cir.2006); *Brooks v. Am. Broad. Cos.,* 932 F.2d 495 (6th Cir.1991)

XIV.   **Whether a reasonable juror could find that any adverse actions allegedly taken against the Plaintiffs were motivated by the exercise of their First Amendment rights for purposes of Plaintiffs' § 1983 First Amendment retaliation claim.**

*Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010)

XV.   **Whether Defendants Williams and Graham are entitled to qualified immunity on Plaintiffs' § 1983 First Amendment retaliation claim.**

*Ahlers v. Schebil,* 188 F.3d 365 (6th Cir. 1999)

XVI.   **Whether Plaintiffs have produced evidence that Defendant Williams and/or Defendant Graham discriminated against Plaintiffs on the basis of their sexual orientation, sex, or race here for purposes of Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (discrimination based on sexual orientation, sex and/or race).**

*Hunter v. Gen. Motors LLC*, 807 F. App'x 540 (6th Cir. 2020)

## <u>INDEX OF AUTHORITIES</u>

<u>Cases</u>

*Adams v. Metiva,*
    31 F.3d 375 (6th Cir.1994)..............................................................................20

*Ahlers v. Schebil,*
    188 F.3d 365 (6th Cir. 1999)..........................................................................22

*Amini v. Oberlin Coll.,*
    440 F.3d 350 (6th Cir.2006)............................................................................23

*Arendale v. City of Memphis,*
    519 F.3d 587 (6th Cir. 2008)............................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................20

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................20

*Bishop v. Lucent Techs., Inc.,*
    520 F.3d 516 (6th Cir. 2008)............................................................................7

*Braithwaite v. Timken Co.,*
    258 F.3d 488 (6th Cir. 2001)..........................................................................15

*Boger v. Wayne Cnty.,*
    950 F.2d 316 (6th Cir. 1991)..........................................................................20

*Brooks v. Am. Broad. Cos.,*
    932 F.2d 495 (6th Cir.1991)............................................................................23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..........................................................................................7

*Collette v. Stein-Mart, Inc.,*
    126 F. App'x 678 (6th Cir. 2005)..................................................................8-9

*Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs,*
    227 Mich. App. 621, 576 N.W.2d 712 (1998)................................................10

*Everson v. Leis,*
    556 F.3d 484 (6th Cir. 2009)............................................................................7

*Fettes v. Hendershot*,
  375 Fed. Appx. 528 (2010) ................................................................21-22

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...........................................................................21-22

*HDC, LLC v. City of Ann Arbor*,
  675 F.3d 608 (6th Cir. 2012) ....................................................................7

*Hunter v. Gen. Motors LLC*,
  807 F. App'x 540 (6th Cir. 2020) .........................................................24-25

*Jackson v. Genesee Cnty. Rd. Comm'n*,
  999 F.3d 333 (6th Cir. 2021) ...................................................................14

*Kalich v. AT & T Mobility, LLC*,
  679 F.3d 464 (6th Cir. 2012) ................................................................8-10

*Laster v. City of Kalamazoo*,
  746 F.3d 714 (6th Cir. 2014) ...................................................................14

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .......................14, 23

*Meadows v. Wahler Auto. Sys., Inc.*,
  45 F. Supp. 3d 645 (E.D. Mich. 2014) .....................................................11

*Paige v. Coyner*,
  614 F.3d 273 (6th Cir. 2010) ...................................................................24

*Pierce v. Commonwealth Life Ins. Co.*,
  40 F.3d 796 (6th Cir.1994) ......................................................................12

*Radvansky v. City of Olmsted Falls*,
  395 F.3d 291 (6th Cir.2005) ....................................................................20

*Randolph v. Ohio Dep't of Youth Servs.*,
  453 F.3d 724 (6th Cir. 2006) ...................................................................12

*Rondigo, L.L.C. v. Twp. of Richmond*,
  641 F.3d 673 (6th Cir. 2011) ...................................................................21

*Scott v. Harris*,
  550 U.S. 372 (2007) ..............................................................................7-8

*Shallal v. Cath. Soc. Servs. of Wayne Cnty.*,
    455 Mich. 604, 566 N.W.2d 571 (1997)............................................................18-19

*Sheets v. Mullins*,
    287 F.3d 581 (6th Cir. 2002)...........................................................................21

*Taylor v. Geithner*,
    703 F.3d 328 (6th Cir. 2013)...........................................................................14

*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).......................................23

*Vredevelt v. GEO Grp., Inc.*,
    145 F. App'x 122 (6th Cir. 2005)...................................................................8, 13

*Wathen v. Gen. Elec. Co.*,
    115 F.3d 400 (6th Cir. 1997).......................................................................12, 25

*Whitman v. City of Burton*,
    493 Mich. 303, 831 N.W.2d 223 (2013).............................................................18

*Williams v. CSX Transp. Co.*,
    643 F.3d 502 (6th Cir. 2011)...........................................................................11

*Wolcott v. Champion Int'l Corp.*,
    691 F. Supp. 1052 (W.D. Mich. 1987)...........................................................18-19

*Woythal v. Tex–Tenn Corp.*,
    112 F.3d 243 (6th Cir.1997)............................................................................15

Rules and Statutes

42 U.S.C.A. § 2000e(b)....................................................................................12

Fed. R. Civ. P. 12(b)(6)....................................................................................7

Fed. R. Civ. P. 56(a).......................................................................................7

MCL 15.362...................................................................................................18

MCL 37.2103(i)...............................................................................................9

MCL 37.2202(1)(a)......................................................................................12-13

## <u>LIST OF EXHIBITS</u>

**Exhibit 1** . . . . Hothman Misane's Deposition Transcript

**Exhibit 2** . . . . Hothman Misane's March 12, 2021 Termination Letter

**Exhibit 3** . . . . Scott Graham's Deposition Transcript

**Exhibit 4** . . . . Scott Graham PLLC Memorandum

**Exhibit 5** . . . . Darren Williams' Deposition Transcript

**Exhibit 6** . . . . Mendoza Register of Actions

**Exhibit 7** . . . . Hothman Misane's Sexual Harassment Complaint

**Exhibit 8** . . . . Misane Text Messages

**Exhibit 9** . . . . Misane's Drawing

**Exhibit 10** . . . March 14, 2021 Text Message and March 19, 2021 Email to Misane

**Exhibit 11** . . . Tyler Sleep's Deposition Transcript

**Exhibit 12** . . . Text Messages between Sleep and other Coworkers

**Exhibit 13** . . . Tyler Sleep's Resignation Email

**Exhibit 14** . . . Jerol Williams' Deposition Transcript

**Exhibit 15** . . . Text Messages between Plaintiff Williams and other Coworkers

**Exhibit 16** . . . Text Messages between Graham and Plaintiff Williams

**Exhibit 17** . . . Jerol Williams' Resignation Letter

<u>**BRIEF IN SUPPORT OF DEFENDANTS DARREN WILLIAMS**</u>
<u>**AND SCOTT GRAHAM'S MOTION FOR SUMMARY JUDGMENT**</u>

<u>**STATEMENT OF MATERIAL FACTS**</u>

All Plaintiffs were employed in different capacities with the Bangor Police Department (the "BPD") at one point in time. When Plaintiffs were terminated, suspended, and/or voluntarily resigned from the Bangor Police Department, Defendant Darren Williams was the Mayor of the City of Bangor,[1] Defendant Scott Graham was the City Attorney for the City of Bangor, and Defendant Tommy Simpson was the City Manager and Chief of Police for the City of Bangor.

All Plaintiffs claim that adverse actions were taken against them on the basis of their sex, sexual orientation, and/or race creating a hostile work environment. Plaintiffs also assert that they were retaliated against for submitting sexual harassment complaints against Defendant Simpson.

**I.    Plaintiff Hothman Misane**

    **A.    Employment with the City of Bangor**

Plaintiff Hothman Misane ("Misane") became employed with the City of Bangor (the "City") in August 2017 as a road patrol officer. (See **Exhibit 1** – Hothman Misane's Deposition Transcript, p. 10). Misane was promoted to sergeant in April 2019 and to "acting chief position as the sergeant" in July 2020. (*Id.* at pp. 11-12). He was then promoted to deputy chief in October 2020. (*Id.* at p. 14). In November 2020, City Council for the City of Bangor appointed him to chief of police. (*Id.* at p. 18). Approximately four months later, Defendant Tommy Simpson ("Simpson") gave Misane a choice to go back to deputy chief or sergeant and he chose to go back to sergeant. (*Id.* at pp. 18, 20, 22). Misane claims that he was not given a reason for his demotion. (*Id.* at p. 22). He is unsure if the decision was Simpson's decision or if City Council made the decision. (*Id.*). Misane was ultimately terminated on March 12, 2021 for losing evidence in a criminal sexual conduct case as described in greater detail below. (See **Exhibit 2** – Hothman Misane's March 12, 2021 Termination Letter).

---

[1] Darren Williams is no longer the Mayor for the City of Bangor.

1

**B.      The Mendoza Investigation and Misane's Termination**

In April 2019, Misane was assigned to investigate a criminal sexual conduct case involving suspect Antonio Lee Mendoza and two underage victims. (**Exhibit 1**, p. 23).

On March 5, 2021, Simpson and Sgt. Justin Weber met with the prosecutors in charge of the Mendoza matter and the prosecutors expressed their extreme dissatisfaction with Misane's handling of the case—more specifically, the fact that Misane lost all pertinent evidence to obtain a conviction in the case, including body-cam videos and personal journal entries.  (See **Exhibit 3** – Scott Graham's Deposition Transcript, pp. 17, 20-24); (See **Exhibit 4** – Scott Graham PLLC Memorandum, pp. 4-5). Shortly thereafter, around March 8, 2021 or March 9, 2021, city attorney Scott Graham ("Graham") was asked to look into Misane's handling of the Mendoza investigation. (**Exhibit 3**, pp. 16-18); (See **Exhibit 5** – Darren Williams' Deposition Transcript, pp. 32-33).

The case involving the younger of the victims was ultimately dismissed short of trial due to lack of evidence. (**Exhibit 3**, pp. 20-21); (**Exhibit 4**, p. 3). Mendoza went to trial on the case involving the older victim and was acquitted of all charges on March 11, 2021. (**Exhibit 4**, pp. 2-5); (See **Exhibit 6** – Mendoza Register of Actions). The jurors were interviewed after the trial and they explained that the weakness in the prosecution's case was the fact that the BPD lost all of the evidence for the matter. (**Exhibit 3**, pp. 21-23); (**Exhibit 4,** p. 5); (**Exhibit 5**, p. 29). On March 12, 2021 (a day after Mendoza's acquittal), Defendant Williams terminated Misane for his handling of the investigation. (**Exhibit 2**); (**Exhibit 5**, pp. 30, 33).

**C.      Misane's Sexual Harassment Complaint against Defendant Simpson and Defendant Graham's Investigation of the Complaint**

Immediately after Misane was terminated, Misane turned in a sexual harassment complaint against Simpson.[2] (**Exhibit 5**, pp. 33-34); (See **Exhibit 7** – Hothman Misane's Sexual Harassment Complaint). In his sexual harassment complaint, Misane asserted that Simpson made him feel

---

[2] None of these complaints involved Defendant Williams or Defendant Graham. (**Exhibit 1**, pp. 117, 142).

uncomfortable because Simpson would talk about his sexual relations with him. (**Exhibit 7**). Yet Misane had no issues discussing matters of a sexual nature with other coworkers. (**Exhibit 1**, pp. 86-88, 90-92); (See **Exhibit 8** – Misane Text Messages). In fact, Misane drew a pornographic picture of individuals engaging in anal sex while he was employed with the BPD and flaunted his "artwork" around the department. (**Exhibit 3**, p. 32); (See **Exhibit 9** – Misane's Drawing).

At no point in time did Misane ever voice his complaints against Simpson to Defendant Williams or Defendant Graham prior to his termination. (**Exhibit 1**, pp. 41-43, 47, 63-64, 120).[3]

Graham immediately began investigating Misane's complaints upon receiving the complaint. (**Exhibit 3**, p. 27). As part of his investigation, Graham first interviewed Simpson. (*Id.* at pp. 27-30). Graham reached out to Misane on three or four separate occasions to speak with him about his complaint, but Misane never responded. (**Exhibit 1**, pp. 113-114); (**Exhibit 3**, p. 34); (See **Exhibit 10** – March 14, 2021 Text Message and March 19, 2021 Email to Misane).

Graham also interviewed the following individuals as a part of his investigation into Misane's complaint against Simpson: Officer Juan Mata, Officer Justin Blankenship, Councilman Jeremy Uplinger, Councilwoman Lynn Farmer, Sgt. Weber, Officer Phil Garcia, Officer Tyler Sleep, Department of Public Works ("DPW") Director John Saylor, DPW employee John Hagel, and the Director of the Bangor Housing Commission. (**Exhibit 3**, pp. 30-35). Graham attempted to interview Plaintiff Williams, but Williams refused to speak with him. (**Exhibit 3**, pp. 33-34, 39).

Graham ultimately concluded that there was no evidence of sexual harassment or discrimination in the workplace and that "Misane, Sleep, Williams, Blankenship, and possibly others were working together to create claims that were not based in fact and were simply designed to harm Simpson, harm the city, and generate claims in order to recover money . . . ." (**Exhibit 3**, pp. 35-37). Graham found that Misane participated in this "locker room talk," thereby undercutting his claims

---

[3] Misane later contradicted his own testimony by stating that he told Defendant Williams that he had a complaint against Simpson during a phone call on March 9, 2021. (**Exhibit 1**, p. 120).

that he was offended by such discussions—especially given the fact that he made a drawing of males engaging in sodomy and passed it around the department. (**Exhibit 3**, p. 36). Nonetheless, Graham felt that discussions of a sexual nature were not appropriate in the workplace, and therefore, verbally reprimanded Simpson for allowing these kinds of discussions to continue and ordered that all City employees attend sensitivity training. (**Exhibit 3**, pp. 36-37).

### D.    Timeline of Events

For the Court's convenience, below is a timeline of the events described above:

<u>August 2017</u> – Misane hired in as a road patrol officer.

<u>April 2019</u> – Misane promoted to sergeant.

<u>April 2019</u> – Misane was assigned to investigate the Mendoza case.

<u>July 2020</u> – Misane was promoted to "acting chief position as the sergeant."

<u>October 2020</u> – Misane was promoted to deputy chief.

<u>February 2021</u> – Misane was demoted back to sergeant.

<u>March 5, 2021</u> – Simpson and Weber's met with prosecutors in charge of the Mendoza case.

<u>March 8, 2021</u> – Graham was asked to investigate Misane's handling of the Mendoza investigation.

<u>March 11, 2021</u> – Mendoza is acquitted of all charges.

<u>March 12, 2021</u> – Misane is terminated. Immediately thereafter, Misane turns in a sexual harassment complaint against Simpson.

<u>March 14, 2021</u> – Graham reached out to Misane via text message asking him to discuss his sexual harassment complaint against Simpson with him.

<u>March 19, 2021</u> – Graham contacted Misane via email asking Misane if he wished to discuss his sexual harassment complaint.

## II.    Plaintiff Tyler Sleep

Plaintiff Tyler Sleep ("Sleep") was hired into the BPD as a police officer in May 2019. (See

**Exhibit 11** – Tyler Sleep's Deposition Transcript, pp. 8-9). On April 22, 2021, Sleep met with

Graham and Sgt. Weber and was ultimately suspended for his work performance. (**Exhibit 3,** pp. 40-41). Defendant Williams was not involved in the suspension of Sleep. (**Exhibit 5**, pp. 42-43). All of Sleep's claims against Defendant Williams and Defendant Graham stem from his April 22, 2021 suspension. (**Exhibit 11**, pp. 85-86).

Sleep turned in a sexual harassment complaint against Simpson *after* he was suspended on April 22, 2021. (**Exhibit 11**, p. 91). Sleep's complaints were similar to Misane's complaints. That is, Sleep claimed that Simpson made him feel uncomfortable because he would talk about his sexual relations with other men with him, even though Sleep had no issue discussing matters of a sexual nature with his coworkers. (**Exhibit 11**, pp. 45-47, 56-57, 102); (See **Exhibit 12** – Text Messages between Sleep and other Coworkers). Sleep had never discussed his complaints in detail with Defendants Williams or Graham prior to turning in his complaint. (**Exhibit 11**, p. 22, 34, 91).

Upon returning to work after his suspension, Graham met with Sleep to discuss his sexual harassment complaint (on or about April 30, 2021). (*Id.* at pp. 92-93).[4] No adverse actions were taken against him after he turned in his complaint. (*Id.* at pp. 94-95). Sleep voluntarily resigned from the BPD on July 19, 2021. (See **Exhibit 13** – Tyler Sleep's Resignation Email).

Neither Defendant Williams nor Defendant Graham ever discussed anything of a sexual nature with Sleep and he is not claiming that either of them discriminated against him on the basis of his sex or sexual orientation. (**Exhibit 11**, pp. 91-93).

### III. Plaintiff Jerol Williams

Plaintiff Jerol Williams ("Plaintiff Williams") became employed with the BPD in January 2020. (See **Exhibit 14** – Jerol Williams' Deposition Transcript, p. 23). On March 13, 2021, Plaintiff Williams submitted a sexual harassment complaint against Simpson to City Council and Defendant Williams (the day after Misane was terminated). (*Id.* at p. 54). All of the complaints against Simpson

---

[4] Sleep is not claiming that Defendants failed to investigate his complaints. (**Exhibit 11**, p. 93).

pertain to comments that Simpson allegedly made—comments that Plaintiff Williams never personally heard Simpson say. (*Id.* at pp. 100-101). Like Misane and Sleep, Plaintiff Williams took issue with Simpson discussing matters of a sexual nature with him, yet Plaintiff Williams was exchanging explicit pictures and text messages with other coworkers and saw no problem with his own conduct. (**Exhibit 14**, pp. 51-52, 119-121); (See **Exhibit 15** – Text Messages between Plaintiff Williams and other Coworkers).

No adverse actions were taken against Plaintiff Williams after he submitted his complaint. (**Exhibit 14**, pp. 55, 98). In fact, Plaintiff Williams received a raise shortly after he submitted his complaint against Simpson. (*Id.* at p. 101). Graham reached out to Plaintiff Williams in an attempt to interview him about his complaint, but Plaintiff Williams stated that he would not be answering any questions due to the City's "untimely and late response." (See **Exhibit 16** – Text Messages between Graham and Plaintiff Williams). Plaintiff Williams eventually voluntarily resigned on May 21, 2021. (**Exhibit 14**, pp. 26, 109); (See **Exhibit 17** – Jerol Williams' Resignation Letter).

Plaintiff Williams' allegations against Defendants Williams and Graham relate solely to the way in which they handled his complaint against Simpson. (**Exhibit 14**, pp. 87-92). He concedes that neither Defendant Williams nor Graham discriminated against him based on his sex or sexual orientation.[5] (*Id.* at p. 96). He does, however, claim that they discriminated against him on the basis of his race because it took them longer to investigate his complaint compared to his white counter parts. (*Id.* at p. 96). Plaintiff Williams claims that it took them two weeks to get back to him about his complaint and they got back to the other employees' complaints sooner. (*Id.* at p. 93). Plaintiff Williams also asserts that this is the basis for his hostile work environment claim. (*Id.* at p. 103).

Graham interviewed the same people for Plaintiff Williams' complaint that he did for Misane's complaint against Simpson. (**Exhibit 3**, p. 38). Graham found nothing to support Williams'

---

[5] Plaintiff Williams also concedes that he is not bringing a claim for sexual harassment against Defendant Williams or Defendant Graham. (**Exhibit 14**, pp. 102-103).

claims for sexual harassment and racial discrimination. As with Misane, Plaintiff Williams also engaged in sexual discussions with his coworkers, thereby undermining his assertion that he was offended by such discussions. (**Exhibit 3**, pp. 38-39).

**STANDARD OF REVIEW**

**I.      Fed. R. Civ. P. 12(b)(6)**

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is proper if a plaintiff's complaint fails to state a claim upon which relief can be granted. The Court must construe the complaint in a light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint states a plausible claim for relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). "The court should not assume facts that could and should have been pled, but were not." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008). If Plaintiff's Complaint does not raise a claim of entitlement to relief, Defendants are entitled to dismissal pursuant to Rule 12(b)(6).

**II.     Fed. R. Civ. P. 56**

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating that no genuine issue of material fact exists and they are entitled to judgment as a matter of law. (*Id*. at 323).  The burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Arendale v. City of Memphis*, 519 F.3d 587, 593 (6th Cir. 2008). The opposing party cannot satisfy this burden by resting solely on allegations made in his pleadings, and "failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that

version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550

U.S. 372, 380 (2007).

## LAW AND ARGUMENT

I.     **Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (hostile work environment), MCL 37.2101, *et seq*.**

Plaintiffs first allege that "Plaintiffs Misane, Williams, and Sleep were subjected to

unwelcome and offensive verbal and/or physical conduct due to their sex and/or gender" and

"Plaintiffs Williams was also subjected to unwelcome and offensive verbal and/or physical conduct

due to his race." (ECF No. 20, PageID.149 ¶¶ 55-56). However, both Defendants Williams and

Graham are entitled to summary judgment on Plaintiffs' claims for hostile work environment under

a sexual harassment theory and a race theory for the reasons described below.

   A.     **Defendant Williams and Defendant Graham are both entitled to summary judgment on Plaintiffs' claim for hostile work environment under Michigan's Elliott-Larsen Civil Rights Act because all Plaintiffs concede that neither Defendant Williams nor Defendant Graham subjected Plaintiffs to unwelcome sexual conduct or communication.**

Michigan's Elliott-Larsen Civil Rights Act ("MELCRA") prohibits an employer from

discriminating because of sex, which includes sexual harassment. *Vredevelt v. GEO Grp., Inc.*, 145

F. App'x 122, 133 (6th Cir. 2005). To establish a prima facie case of hostile work environment based

on sexual harassment under MELCRA, Plaintiffs must present evidence that: (1) they belonged to a

protected group; (2) they were subjected to communication or conduct on the basis of sex; (3) they

were subjected to unwelcome sexual conduct or communication; (4) the unwelcome conduct or

communication was intended to or did substantially interfere with Plaintiffs' employment or created

an intimidating, hostile, or offensive work environment;[6] and (5) respondeat superior (for employer

liability). *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 470 (6th Cir. 2012).

---

[6] "[A] hostile work environment claim under MELCRA requires the employee to show that the harassment was sufficiently severe and persistent to affect seriously [their] psychological well being." *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 687 (6th Cir. 2005) (internal quotations and citations omitted). It is well-established that "a single incident is

In order to establish the second element of their hostile work environment claim, Plaintiffs need to show that "*but for* the fact of [their] sex, [they] would not have been the object of harassment." *Kalich*, 679 F.3d at 470 (internal quotations and citations omitted). In other words, Plaintiffs must show that the harassment was gender-based. *(Id.*). "A plaintiff can make this showing with evidence that members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *(Id.)* (internal quotations and citations omitted).

There are three ways in which a male plaintiff can establish that they were subjected to communication or conduct "on the basis of sex" for a hostile work environment claim based on same-gender sexual harassment: "(1) by showing that the harasser making sexual advances acted out of a sexual desire; (2) by showing that the harasser was motivated by general hostility to the presence of men in the workplace; or (3) by offering direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Kalich*, 679 F.3d at 470-471 (internal quotations and citations omitted).

With regards to the third element of hostile work environment claim under MELCRA, "[t]he Michigan Supreme Court has held that 'actionable sexual harassment requires conduct or communication that *inherently* pertains to sex.'" *Kalich*, 679 F.3d at 471-472, citing *Corley v. Detroit Bd. of Educ.,* 470 Mich. 274, 681 N.W.2d 342, 345 (2004). Pursuant to MCL 37.2103(i), sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

> (i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .

> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .

---

generally insufficient to constitute a hostile work environment unless it was severe and perpetrated by an employer in a closely-knit working environment." (*Id.* at 688) (internal quotations and citations omitted).

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . or creating an intimidating, hostile, or offensive employment . . . environment.

"[T]easing and name-calling, while inappropriate in a professional environment, are insufficient to state a claim for sexual harassment." (*Id.* at 471) (internal citations omitted).

Therefore, Plaintiffs must show that the unwanted or unwelcome conduct or communication was (1) sexual in nature, and (2) directed to them *because of* their gender. (*Id.* at 473). Again, "[w]ithout evidence of some gender-based animus, the mere fact that [a defendant] made a comment to [a plaintiff] that was sexual in nature cannot form the basis of a cognizable claim." (*Id.*) (internal citation omitted).

Here, all Plaintiffs conceded that neither Defendant Williams nor Defendant Graham subjected Plaintiffs to unwelcome sexual conduct or communication based on their gender and admitted that they are not bringing a sexual harassment claim against these Defendants. (**Exhibit 1**, p. 117); (**Exhibit 11**, pp. 91-92); (**Exhibit 14**, p. 96). Accordingly, it is undisputed that both Defendant Williams and Defendant Graham are entitled to summary judgment on this claim.

**B.    Defendant Williams and Defendant Graham are entitled to summary judgment on Plaintiff Williams' claim for racial hostile work environment because the alleged harassment was not sufficiently severe or pervasive to alter the conditions of Plaintiff Williams' employment and create an abusive working environment.**

The elements for a hostile work environment claim on the basis of race under MELCRA are identical to the elements for a claim based on sexual harassment. *Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 227 Mich. App. 621, 629, 576 N.W.2d 712, 716 (1998).

Here, it is undisputed that Plaintiff Williams is African-American, and thus, belongs to a protected group. With regards to his claim against Defendant Williams and Defendant Graham, Plaintiff Williams is not claiming that Defendant Williams and Defendant Graham made racial comments to him. Rather, he is claiming that they discriminated against him on the basis of his race because it took them two weeks longer to investigate his complaints compared to his white counter

parts. (**Exhibit 14**, pp. 93, 96).  However, these allegations do not form the basis of a racial harassment hostile work environment claim.

"In order to establish a prima facie case on h[is] racial harassment hostile work environment claims under . . . the [M]ELCRA, [Plaintiff Williams] must establish, among other things, that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Meadows v. Wahler Auto. Sys., Inc.*, 45 F. Supp. 3d 645, 660 (E.D. Mich. 2014) (internal quotations and citations omitted). "Factors to consider include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (internal quotations and citations omitted).

Simply put, the allegations against Defendant Williams and Defendant Graham to not rise to a hostile work environment claim. First, there is no evidence that it took Defendants an unreasonable amount of time to investigate his complaint against Simpson. Second, even if they did take longer to investigate Plaintiff Williams' complaint than his white counterparts' complaints, there is no evidence whatsoever that it was because of his race, or that the alleged two-week delay was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. It is undisputed that certain complaints were addressed before his because they were made prior to his complaint. (**Exhibit 14**, p. 93). It is also undisputed that Defendant Graham reached out to Plaintiff Williams no more than 16 days after he initially submitted his complaint,[7] which in no way can be considered unreasonable under the circumstances.

As such, Defendant Williams and Mr. Graham are entitled to summary judgment on Plaintiff Williams' racial harassment claim.

---

[7] (**Exhibit 14**, p. 96).

II.   **Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (hostile work environment), 42 U.S.C. § 2000e, *et seq.***

Plaintiffs allege that "[b]ecause of their sexual orientation and/or sex, [they] have been subjected to treatment during their careers with Defendants that have been disparate from that accorded to non-heterosexual employees of Defendant." (ECF No. 20, PageID.161 ¶ 128). Additionally, Plaintiff Williams alleges that "[b]ecause of his race, he has been subjected to treatment during his career with Defendants that has been disparate from that accorded to non-African American employees of Defendant." (ECF No. 20, PageID.161 ¶ 129).

The elements for a hostile work environment claim under Title VII of the Civil Rights Act of 1964 are the same as a hostile work environment claim under MELCRA.[8]  As such, Plaintiffs' claims against Defendants Williams and Graham under Title VII fail for the same reasons that their claims fail under MELCRA as described above. Moreover, Defendants Williams and Graham are entitled to summary judgment on this claim because they are not Plaintiffs' "employer"[9] as defined under Title VII. See *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (holding that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.").

III.  **Plaintiff Williams' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (disparate treatment), MCL 37.2101, *et seq.***

Section 202 of MELCRA prohibits an employer from "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because

---

[8] See *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) ("Under Title VII, in order to make out a hostile-work-environment claim based on sexual harassment, an employee must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment . . . . The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.") (internal quotations and citations omitted).

[9] The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person* . . . ." 42 U.S.C.A. § 2000e(b) (emphasis added). "Agent" is not defined by Title VII but has been interpreted as "an individual who serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803 (6th Cir.1994) (internal quotations and citation omitted).

of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL §
37.2202(1)(a). There are two broad categories of claims under Section 202 of MELCRA:
disparate treatment and disparate impact claims. *Vredevelt v. GEO Grp., Inc.,* 145 F. App'x 122, 127
(6th Cir. 2005). Here, Plaintiff Williams has alleged a disparate treatment race discrimination claim
and asserts that he was treated differently from similarly situated Caucasian employees in the terms
and conditions of his employment, on the unlawful basis of race. (ECF No. 20, PageID.150). Plaintiff
Williams is relying on indirect evidence to support his disparate treatment claim; therefore, "[]he must
establish a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that
[he] was the victim of unlawful discrimination." *Vredevelt,* 145 F. App'x at 127 (internal quotations
and citation omitted). The Court in *Vredevelt* elaborated on what a plaintiff must show under this test:

> Under this test, as applied by the state of Michigan, a plaintiff may establish a prima
> facie case of prohibited discrimination by demonstrating that: (1) []he was a member
> of a protected class; (2) adverse employment action was taken against h[im]; (3) []he
> was qualified for the position; and (4) []he was treated differently than similarly-
> situated [Caucasion] employees. If a prima facie case is established, the employer has
> the burden of coming forward with a legitimate, nondiscriminatory reason for the
> adverse employment action. If the employer offers such evidence, the plaintiff has the
> burden of proving that the stated reason is merely a pretext for discrimination. This
> burden merges with the plaintiff's overall burden of proving the claim.

*Vredevelt,* 145 F. App'x at 127-128 (internal citations omitted).

Here, it is undisputed that Plaintiff Williams was never suspended or terminated.[10] Instead,
Plaintiff Williams claims that the "adverse action" in the instant matter was that he was not considered
for the sergeant and school resource officer positions because of his race. (**Exhibit 14**, pp. 40-44).

However, Plaintiff Williams admits that he never applied for either job. (*Id.* at pp. 40-41).
While Plaintiff Williams previously held the position of school resource officer, the schools shut
down due to COVID and a school resource officer was no longer needed. (*Id.* at p. 41). More
importantly, neither Defendant Williams nor Defendant Graham had the authority to promote

---

[10] Plaintiff Williams voluntarily resigned on May 21, 2021. (**Exhibit 17**).

employees in the Bangor Police Department. Therefore, even if Plaintiff Williams had applied for these positions, it was not their decision to turn him down.  Lastly, Plaintiff Williams has failed to produce any evidence whatsoever establishing that he was not considered for these positions *on the basis of his race*. Accordingly, Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' claim for disparate treatment under MELCRA.

**IV.   Plaintiffs' claim for violation of Michigan's Elliott-Larsen Civil Rights Act (retaliation), MCL 37.2101, *et seq.* and violation of Title VII of the Civil Rights Act of 1964 (retaliation), 42 U.S.C. § 2000e, *et seq.***

In order to establish a *prima facie* case of retaliation under both Title VII and MELCRA, Plaintiffs must show that: (1) they engaged in protected activity; (2) their exercise of such protected activity was known by Defendants; (3) thereafter, Defendants took an action that was "materially adverse"[11] to Plaintiffs; and (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014); *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021).

Since Plaintiffs are relying on circumstantial evidence to support their claims of retaliation, their claims must be evaluated using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973):

> Under *McDonnell Douglas*, if the plaintiff establishes her prima facie case then the burden shifts to the defendant to demonstrate some 'legitimate, nondiscriminatory reason' for its action. If the defendant produces such a reason, the burden shifts back to the plaintiff to show that the proffered reason was a mere pretext for discrimination.  The ultimate burden, however, remains with the plaintiff to convince the factfinder that the defendant retaliated against her for engaging in protected activity.

*Jackson*, 999 F.3d at 344 (internal citations omitted).

---

[11] "In order to establish an adverse employment action, [Plaintiffs] must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (internal quotations and citations omitted).

The Court in *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001) elaborated on what a plaintiff must produce to establish causation between a protected activity and the materially adverse action:

> [T]he plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.
>
> In order to determine whether the defendant had an 'honest belief' in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made . . . .
>
> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> If there is no material dispute that the employer made a 'reasonably informed and considered decision' that demonstrates an 'honest belief' in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

(Internal citations omitted). Plaintiffs must produce sufficient evidence from which the jury could "reasonably reject [Defendants'] explanation" and infer that the defendants "intentionally discriminated" against them. *Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 246–47 (6th Cir.1997).

Here, Plaintiffs allege that they engaged in a protected activity by reporting sexual discrimination to the City's Department heads and that Defendants changed the terms of their employment due to engaging in such protected activities. (ECF No. 20, PageID.151 ¶¶ 68-70) (ECF No. 20, PageID.159 ¶¶ 120-121).

### A.    Defendants Williams and Graham are not Plaintiffs' "employers" for purposes of Title VII, and thus, cannot be sued under Title VII.

As already described herein, Defendants Williams and Graham are not Plaintiffs' "employer" as defined under Title VII. Therefore, they are entitled to summary judgment on Plaintiffs' retaliation claim under Title VII.

**B.      Defendants Williams and Graham are entitled to summary judgment on Plaintiff Misane's claim for retaliation because (1) he was terminated for losing evidence in a criminal sexual conduct case resulting in the acquittal of a pedophile, and (2) Misane did not turn in his complaint against Simpson until after he was terminated.**

Even if this Court determines that Defendants Williams and Graham are Plaintiffs' "employer" for purposes of Plaintiffs' retaliation claim, they are entitled to summary judgment on Misane's retaliation claim regardless because Misane was terminated for his handling of the Mendoza investigation—not because he turned in a sexual harassment complaint against Simpson. To be sure, it is undisputed that Misane lost pertinent evidence in the Mendoza case which resulted in the acquittal of a pedophile and Plaintiffs have failed to produce sufficient evidence from which a jury could reasonably reject the City's explanation for Misane's termination and infer that the City "intentionally discriminated" against him.

More importantly, Misane did not turn in his complaint against Simpson until *after* he was terminated; therefore, Misane has not established a causal connection between the turning in of his complaint and his termination. Even assuming that Misane told Defendant Williams about his complaint generally on March 9, 2021 during a phone call,[12] Misane concedes that he did not get into specifics during the phone call,[13] and the City had already begun investigating his handling of the Mendoza investigation at that point. Accordingly, no reasonable juror could reject the City's explanation for his termination. With regards to Graham, Misane admitted that he never told him about his complaint against Simpson prior to his termination. (**Exhibit 1**, p. 120). As such, Defendants Williams and Graham are entitled to summary judgment on Misane's retaliation claim.

**C.      Defendants Williams and Graham are entitled to summary judgment on Plaintiff Sleep's claim for retaliation because (1) he was suspended for his work performance, and (2) he did not disclose the details of his complaint against Simpson until after he was suspended.**

---

[12] Defendant Williams denies that this occurred. (**Exhibit 5**, p. 34).
[13] (**Exhibit 1**, p. 120).

As with Plaintiff's Misane's retaliation claim, Defendants Williams and Graham are also entitled to summary judgment on Sleep's retaliation claim because Sleep was suspended for his work performance—not because he turned in a complaint against Simpson. In fact, Sleep admits that he did not turn in his complaint until *after* he was suspended. (**Exhibit 11**, p. 91). As such, no reasonable juror could conclude that Sleep was suspended because of his complaint against Simpson and Defendants Williams and Graham are entitled to summary judgment on Sleep's claim for retaliation under MELCRA and Title VII.

    **D.**    **Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' claim for retaliation because (1) no adverse action was taken against him, and (2) even if the alleged "non-promotions" are considered "materially adverse" actions, other officers were promoted to the positions before Plaintiff Williams submitted his complaint.**

Lastly, Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' retaliation claim because Plaintiff Williams admits that no adverse actions were taken against him after he turned in his complaint. (**Exhibit 14**, pp. 55, 98). In fact, Plaintiff Williams received a raise shortly after he submitted his complaint against Simpson. (*Id.* at p. 101).

In anticipation of Plaintiff Williams' argument that his "non-promotions" were "materially adverse" actions, the alleged non-promotions all occurred prior to Plaintiff Williams turning in his complaint against Simpson. Therefore, Plaintiff Williams has failed to establish a causal connection between the turning in of his complaint and the "non-promotions" and Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' claim for retaliation under MELCRA and Title VII.

**(V)**    **Plaintiffs' claim for violation of the Whistleblowers' Protection Act, MCL 15.362.**

Plaintiffs claim that the City was aware that Plaintiff Misane and Plaintiff Sleep had reported or were about to report violations of law and the City terminated and/or suspended Plaintiffs Misane and Sleep in violation of Michigan's Whistleblowers' Protection Act ("WPA"), MCL 15.362. (ECF

No. 20, PageID.152). There are no allegations set forth regarding Plaintiff Williams. As such, Defendants have failed to state a claim for a violation of the WPA for this Plaintiff.

The WPA was enacted to "provide protection to employees who report a violation or suspected violation of state, local, or federal law" and "establish[es] a cause of action for an employee who has suffered an adverse employment action for reporting or being about to report a violation or suspected violation of the law." *Whitman v. City of Burton*, 493 Mich. 303, 312, 831 N.W.2d 223, 229 (2013) (internal quotations and citations omitted). The WPA provides, in pertinent part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

MCL 15.362. In order to establish a prima facie case under the WPA, a plaintiff must show that (1) he was engaged in protected activity as defined by the act, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Whitman*, 493 Mich. at 313. "Additionally, MCL 15.362 makes plain that protected conduct does not include reports made by an employee that the employee knows are false, or reports given because the employee is requested to participate in an investigation by a public body." (*Id.*).

As with Plaintiffs' retaliation claims, a claim under the WPA must be evaluated under a burden-shifting framework:

> Once plaintiff has established a *prima facie* case of retaliation, the burden shifts to the defendant to articulate some legitimate non-retaliatory reason for its actions. If defendant is able to articulate a legitimate non-retaliatory reason for its action, plaintiff retains the opportunity to demonstrate that the proffered reasons were a mere pretext for retaliation and thus prevail under the Act.

*Wolcott v. Champion Int'l Corp.*, 691 F. Supp. 1052, 1058 (W.D. Mich. 1987). "The primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on

matters of public concern, and not personal vindictiveness." *Shallal v. Cath. Soc. Servs. of Wayne Cnty.*, 455 Mich. 604, 621, 566 N.W.2d 571, 579 (1997) (internal quotations and citations omitted).

In *Wolcott*, the Court found that the plaintiff failed to prove that a causal connection existed between the plaintiff's protected activity and the plaintiff's termination because the plaintiff had knowledge of the defendant-employer's suspected violations of law for several months and held off blowing the whistle until it became apparent that he might lose his job due to circumstances unrelated to the violations. 691 F. Supp. at 1059. In other words, a plaintiff cannot hold off blowing the whistle until it becomes most advantageous for them to do so:

> Where however, an employee acts unlawfully or on behalf of his or her employer and keeps the matter quiet for more than a year, eventually revealing it not to the appropriate authorities or even to others for the purpose of preventing public injury, but rather for some other limited and private purpose, however laudable that purpose may appear to the employee, no such protection is afforded. Were we to adopt [the plaintiff's] argument we would be discouraging disclosure and correction of unlawful or improper acts by encouraging employees to 'go along' and then keep quiet reserving comment or disclosure until a time best suited to the advancement of their own interests.

(*Id.* at 1065–66) (internal quotations and citations omitted). The Court further explained that the plaintiff "offered no evidence which suggests that the Michigan legislature intended the Whistleblowers Act to be used as an offensive weapon by disgruntled employees." (*Id.* at 1066).

Here, both Misane and Sleep's claims under the WPA fail for the same reasons why their retaliation claims fail as described above.

Misane was terminated for losing evidence in a criminal sexual conduct case resulting in the acquittal of a pedophile—not because he turned in a complaint against Simpson, and Misane did not turn in his complaint against Simpson until after he was terminated, therefore, there is no causal connection between turning in his complaint and his termination. Likewise, Sleep was suspended for his work performance—not because he turned in a complaint against Simpson, and he did not disclose the details of his complaint against Simpson until after he was suspended, therefore, there is no causal connection between turning in his complaint and his suspension.

**(VI)     Plaintiffs' § 1983 equal protection claim under the Fourth Amendment.**

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) (citation omitted). The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir.2005).

Plaintiffs are required to show that Defendants Williams and Graham, "made an adverse employment decision with a discriminatory intent and purpose." *Boger v. Wayne Cnty.*, 950 F.2d 316, 325 (6th Cir. 1991) (internal quotations and citation omitted). Plaintiffs "must do more than just introduce evidence of discriminatory intent and suggest that such intent could have played a role in an adverse employment decision." (*Id.*) (internal quotations and citation omitted). Rather, Plaintiffs are required to demonstrate that the adverse employment decision would not have been made "but for" their gender and/or race. (*Id.*).

**A.      Plaintiffs fail to allege sufficient facts to state an equal protection claim.**

It is well-established that conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983, as some factual basis for the claim must be set forth in the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient pursuant to the pleading requirements under Fed. R. Civ. P. 8(a)(2). *Twombly*, 550 U.S. at 555.

Here, Plaintiffs claim that "Defendants intentionally discriminated against Plaintiffs Misane, Sleep, and Williams based on their sex and/or gender in all manner of ways as set forth herein all in violation of 42 U.S.C. §1983," and "Defendants herein intentionally discriminated against Plaintiff Williams based on his race in all manner of ways as set forth herein all in violation of 42 U.S.C.

§1983." (ECF No. 20, PageID.153 ¶¶ 81-82). Plaintiffs fail to indicate with any specificity whatsoever of the adverse actions taken against each of them, which employees were similarly situated, and how each of them were treated differently from others who were similarly situated. As such, Plaintiffs fail to state an equal protection claim against Defendants Williams and Graham and both individuals are entitled to summary judgment. See *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (holding that the district court erred by failing to grant summary judgment on the plaintiff's § 1983 equal protection claim under *Iqbal* and *Twombly* because "[n]othing but legal conclusions suggest[ed] that the state defendants acted with unlawful discriminatory animus," and "[b]y accepting these legal conclusions as sufficient, the district court failed to heed the teaching of *Iqbal* . . . .").

> **B.** **Defendants Williams and Graham are entitled to summary judgment for the same reasons they are entitled to summary judgment on Plaintiffs' claims for hostile work environment and disparate treatment.**

Even if this Court finds Plaintiffs' conclusory allegations sufficient to raise a claim of entitlement to relief, their claims must be dismissed regardless for the same reasons that their claims for hostile work environment and disparate treatment must be dismissed. As already explained herein, there is simply no evidence that (1) Misane was terminated based on his gender and/or sexual orientation; (2) Sleep was suspended based on his gender and/or sexual orientation; or (3) an adverse action was taken against Plaintiff Williams based on his race, gender, and/or sexual orientation.

> **C.** **Defendants Williams and Graham are entitled to qualified immunity.**

Plaintiffs' § 1983 claim against Defendants Williams and Graham is also limited by the qualified immunity exception, which "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002), quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Thus, the doctrine requires a two part inquiry as to (1) whether the facts alleged by the plaintiffs establish that the defendants violated one of the plaintiffs' constitutional rights, and (2) if so, whether such right

was clearly established, meaning that it would have been clear to a reasonable official confronting the same situation that his conduct was unlawful. *Fettes v. Hendershot*, 375 Fed. Appx. 528, 531 (2010). A showing of "mere negligence or recklessness is insufficient" for Plaintiffs to successfully remove the cloak of qualified immunity from Defendants.  *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir. 1999). Instead, Plaintiffs must prove that the Defendants' conduct "fell below an objective standard of reasonableness," which requires Plaintiffs to establish that the Defendants "acted knowingly or intentionally" to violate Plaintiffs' constitutional rights. (*Id*. at 373), quoting *Harlow*, 457 U.S. at 815.

Neither Defendant Williams nor Defendant Graham can be said to have knowingly violated the Equal Protection Clause here. Graham was asked to investigate Misane's performance in the Mendoza investigation and it was determined that he lost pertinent evidence in the case which resulted in a pedophile's acquittal. It was his opinion that Misane could be terminated on this basis and that is what Defendants Williams did. Only after Misane was terminated did he submit his written complaint to Defendant Williams. Likewise, Graham was asked to conduct an investigation regarding complaints about Sleep and Sleep was ultimately suspended for his work performance. Sleep then submitted his complaint against the Simpson the next day and no adverse actions were taken against him after that. Lastly, Plaintiff Williams admitted that no adverse actions were taken against him after he turned in his complaint.

As such, Defendants Williams and Graham did not knowingly violate Plaintiffs' constitutional rights and they are entitled to qualified immunity on Plaintiffs' § 1983 equal protection claim.

**(VII)   Defendants Williams and Graham are entitled to summary judgment on Plaintiff Williams' § 1981 claim because Plaintiff Williams fails to state with specificity how his alleged "contract" with the City of Bangor was afflicted, diminished, and undermined on the basis of his race.**

Plaintiff Williams claims that he entered into a contract of employment with the City of Bangor and that the Defendants "turn[ed] that contract into an employment situation wherein Plaintiff Williams was subjected to a racially discriminatory work environment that inflicted upon him

humiliation, and racism . . . whereby his right to make and enforce his contract with the City of Bangor was afflicted, diminished, and undermined." (ECF No. 20, PageID.153-154 ¶¶ 86-87).

Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll*., 440 F.3d 350, 358 (6th Cir.2006). "In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." (*Id.*) (internal citation omitted). When a plaintiff only has circumstantial evidence of a plaintiff's "intent," the Court must follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Amini*, 440 F.3d at 358.

Plaintiff Williams' § 1981 claim must first be dismissed because he fails to state with specificity how his alleged "contract"[14] with the City of Bangor was afflicted, diminished, and undermined. See *Brooks v. Am. Broad. Cos.,* 932 F.2d 495, 498 (6th Cir.1991) (dismissing § 1981 complaint because, among other issues, the plaintiff's "allegations were fatally vague and conclusory in omitting any mention of the laws of which he allegedly was denied the full and equal benefit"). This claim must also be dismissed because there is no evidence, circumstantial or otherwise, that Defendants intentionally discriminated against Plaintiff Williams on the basis of race, as already thoroughly explained herein.

---

[14] Defendants deny that Plaintiff Williams had a contract with the City—Plaintiff Williams was always an at-will employee while he was employed with the City.

**(VIII)  Plaintiffs' § 1983 First Amendment retaliation claim.**

In order for Plaintiffs to establish liability for their § 1983 retaliation claim under the First Amendment, they must show the following:

> (1)    that the plaintiff[s] w[ere] engaged in a constitutionally protected activity;
>
> (2)    that the defendants' adverse action caused the plaintiff[s] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and
>
> (3)    that the adverse action was motivated at least in part as a response to the exercise of the plaintiffs' constitutional rights.

*Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (internal citation omitted).

Here, Plaintiffs allege that adverse actions were taken against them after they filed discriminatory harassment complaints and participated in the investigatory process of those complaints. (ECF No. 20, PageID.156 ¶¶ 99-100).

However, this claim fails for the same reasons as Plaintiffs' claims for retaliation under MELCRA and Title VII as already thoroughly described herein. That is, no reasonable juror could find that any adverse actions allegedly taken against the Plaintiffs were motivated by the exercise of their constitutional rights. Moreover, both Defendants Williams and Graham are entitled to qualified immunity for the same reasons that they are entitled to qualified immunity for Plaintiffs' equal protection claim as described above.

**(IX)   Plaintiffs' claim for violation of Title VII of the Civil Rights Act of 1964 (discrimination based on sexual orientation, sex and/or race), 42 U.S.C. § 2000e, *et seq.***

Plaintiffs claim that during their employment with Defendants, "they were all subjected to acts of sexual orientation and/or sex discrimination by Defendants' employees and supervisors, and Plaintiff Williams was subjected to acts of race discrimination," and "[the] discrimination created a hostile and abusive work environment for Plaintiffs." (ECF No. 20, PageID.158 ¶¶ 112-113).

To establish a prima facie case of discrimination based on sexual orientation, sex, and/or race under Title VII, Plaintiffs must show that they: 1) are a member of a protected class; 2) were qualified

for the position; 3) suffered an adverse employment action; and 4) suffered such action under circumstances which give rise to an inference of unlawful discrimination. *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 544 (6th Cir. 2020).

First, Defendants Williams and Graham are entitled to summary judgment on this claim because they are not Plaintiffs' "employer" as defined under Title VII as already described herein. See *Wathen*, 115 F.3d at 405 (holding that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII.").

Second, and as repeatedly explained herein, there is no evidence that Defendant Williams and/or Defendant Graham discriminated against Plaintiffs on the basis of their sexual orientation, sex, or race here. Misane was terminated based on the fact that he lost pertinent evidence for the Mendoza case, resulting in the acquittal of a pedophile; Sleep was suspended for his work performance; and no adverse actions were taken against Plaintiff Williams.

Therefore, Defendants Williams and Graham are entitled to summary judgment on Plaintiffs' claim for discrimination under Title VII.

WHEREFORE, Defendants DARREN WILLIAMS and SCOTT GRAHAM respectfully request that this Court grant their Motion for Summary Judgment and dismiss Plaintiffs' claims against them in their entirety.

Respectfully submitted,

 /s/Kathleen M. Jozwiak
Kathleen M. Jozwiak (P79921)
GARAN LUCOW MILLER, P.C.
Attorney for Defendants
kjozwiak@garanlucow.com

Dated: November 30, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, my assistant, Gail J. Musialowski, electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**Michael S. Bogren**
mbogren@plunkettcooney.com,daustin@plunkettcooney.com

**Kirstina Rae Magyari**
kirstie@markolaw.com,heather@markolaw.com

**Jonathan Robert Marko**
jon@markolaw.com,melinda@markolaw.com

and I hereby certify that on November 30, 2022, my assistant, Gail J. Musialowski, mailed by United States Postal Service the foregoing document to the following non-ECF participants, with full legal postage prepaid thereon and deposited in the United States mail:        **NA**

 /s/ Kathleen M. Jozwiak
1155 Brewery Park Blvd., Suite 200
Detroit, MI  48207
313.446.5560
kjozwiak@garanlucow.com
P79921